No. 19,569.

ERNESTINA DURANT, *Appellant*, v. E. C. WHITCHER, as Administrator with the Will Annexed, etc., et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. WILLS—*Lawyer Who Drew the Will—Competent Witness.* The rule applied that in an action to set aside a will the lawyer who drew it may testify to the conversation had at the time between himself and the testator.

2. SAME — *Mental Condition of Testator — Competent Witnesses.* The scrivener and subscribing witnesses of a will held to be competent witnesses as to the mental condition of the testator.

3. SAME—*Evidence Sustains the Validity of Will.* The evidence held sufficient to sustain a judgment upholding a will against an attack on the ground of want of capacity and fraud.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed April 8, 1916. Affirmed.

*Park B. Pulsifer,* and *Charles L. Hunt,* both of Concordia, for the appellant.

*F. W. Sturges,* and *Fred W. Sturges, jr.,* both of Concordia, for the appellees.

The opinion of the court was delivered by

MASON, J.: In June, 1906, T. J. Durant executed a will giving half his property to his wife, making specific devises to her and to a brother of a former wife, and leaving the residue to his nephew and to nieces and nephews of his former wife. He died in February, 1909, being then 79 years of age. He left no children. His widow brought an action to set aside the will on the ground of want of testamentary capacity and fraud. Judgment was rendered for the defendants, and she appeals.

Complaint is made of the rejection of evidence that the testator's brother-in-law, to whom the will gave an eighty-acre tract of land, already owned more than a thousand acres. The matter does not seem of vital importance, but in any event the ruling can not be reviewed, because the evidence was not produced at the hearing of the motion for a new trial. (Civ. Code, § 307.)

(1) The draftsman of the will—a lawyer—was permitted to testify in detail as to conversations between himself and the testator at the time of its preparation and execution. This is objected to as a violation of the rule relating to privileged communications between attorney and client. (Civ. Code, § 321.) The ground upon which the petition attacked the will (apart from the question of capacity) was that the testator's signature was procured by the representation of the lawyer that it was a paper of a wholly different character. That the lawyer's testimony was competent is settled by a recent decision where the witness' relation to the testator was subsantially the same as in the present case, and where his testimony covered practically the same field. (*Black v. Funk*, 93 Kan. 60, 143 Pac. 426, *ante*, p. 509, 155 Pac. 959. See, also, *Lumber Co. v. Cox*, 94 Kan. 563, 147 Pac. 67.)

(2) The testimony of the scrivener and the subscribing witnesses concerning the testator's capacity is objected to on the ground that they were asked the direct question whether he was of sound mind, instead of being required to state their opinions, and on the further ground that their acquaintance with him was not such as to render their opinions competent. There is hardly a substantial difference between asking a witness his opinion of the mental condition of another and asking him to state what that condition was, but if any particular questions were incompetent in form the error in their admission was immaterial, for they are not shown to have affected the judgment. (*Kimball v. Edwards*, 91 Kan. 298, 137 Pac. 948.) The other objection goes rather to the weight than to the admissibility of the evidence. Any witness who has "a fair basis for an opinion" concerning the mental condition of another person is qualified to testify. (*The State v. Beuerman*, 59 Kan. 586, 589, 53 Pac. 874.) "Whether there is a fair basis for an opinion by a witness must be left largely to the trial court." (*Kempf v. Kappa*, 74 Kan. 153, 155, 85 Pac. 806.) The effect of the evidence is for the determination of the tribunal before which it is given. (*Howard v. Carter*, 71 Kan. 85, 80 Pac. 61.) Here each of the subscribing witnesses had done business with the testator and had had considerable opportunity for observing his conduct. Their relation to the making of the will disposes of any question regarding their competence.

"Whatever the result of the controversy as to lay witnesses in general all Courts have preserved the traditional practice of receiving the opinions of attesting witnesses to wills. The theory that the law had provided this preappointed testimony for the express purpose of securing witnesses to the testator's capacity as well as to his signature, as well as the unquestioned practice, prevailed over any theory that the judges might have as to the bearing of the Opinion rule." (3 Wigmore on Evidence, § 1936.)

(3) The principal contention of the plaintiff is that the judgment is not supported by the evidence. The trial court must be deemed to have accepted the version of the lawyer who drew the will as to what took place at that time, and this disposes of all question regarding the practice of the fraud alleged in the petition. A large amount of evidence was given tending to show that the testator was enfeebled in body and mind and was incapable of transacting business. But there was also competent and substantial oral evidence to the contrary. The lawyer said: "I think he was of sound mind and memory. He had sufficient mind to know what he was doing, and to know what property he possessed." One subscribing witness said: "I had no question as to his soundness of mind at that time; I believe and thought he was of sound mind and I now say he was." The other said: "I supposed he was mentally sound and when the will was drawn; I know it just as much as I know any man was." We can not review the decision of the trial court upon the conflicting oral evidence.

The judgment is affirmed.