No. 20,392.

MARGARET BREEN, *Appellant*, v. REES DAVIES, as Executor, etc., et al, *Appellees*.

### SYLLABUS BY THE COURT.

1. ORAL ANTENUPTIAL AGREEMENT — *Failure of Proof to Establish Contract—Statute of Frauds.* Plaintiff pleaded an oral antenuptial agreement to marry and care for her husband during the remainder of his life—special need for care being set forth—and to leave her property, save her patrimony, to him should he outlive her, she to have all his property if she survived him. The proof failed to show any agreement for care, save such as might be implied from the marriage itself. *Held,* that the marriage and care for him while he lived did not remove the operation of the statute of frauds.

2. TRIAL—*Findings—Evidence.* The findings of fact are supported by the evidence and justify the conclusions of law in favor of the defendants.

Appeal from Clay district court; FRED R. SMITH, judge. Opinion filed November 11, 1916. Affirmed.

*W. S. Roark*, of Junction City, for the appellant.

*F. L. Williams,* and *James L. Hogin,* both of Clay Center, for the appellees.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued the executor of the will and estate, and certain devisees of her deceased husband, to enforce an alleged contract by which she was to have his property at his death. The second cause of action related to his testamentary capacity, but was taken out of the case by the trial court and need not be considered.

Michael Breen, a widower fifty-nine years of age, without children, having several thousand dollars' worth of property in Clay county, married in Clay Center in March, 1902, the plain-

tiff, a maiden lady thirty-seven years of age, owning 160 acres of land which she had preëmpted in Wichita county. With the exception of a few weeks' separation incident to a divorce action begun by the husband and afterwards dismissed, the parties lived together until his death in August, 1913. After their marriage he destroyed a will giving his property to his relatives in Ireland, and later made another, giving one-half to them and one-half to his wife. The petition alleged, after reciting his physical condition, "That while he was in such condition he proposed to plaintiff, who was many years his junior, that if she would marry him and care for him during the remainder of his life, he would, at his death, give to her by will all of the estate, both real and personal, of which he might die seized. It was also a part of said proposition that if plaintiff, in the event of their marriage, should die without issue before the death of said Michael L. Breen, she would leave to him her estate, save and except such inheritance as she might obtain from her father's estate. That in consideration of the said promises and of her love and affection for said Michael L. Breen plaintiff accepted said proposition, and pursuant thereto entered into said marriage relation, and during the remaining eleven years and more of the life of said Michael L. Breen lived with and cared for him in such manner as his age and enfeebled condition of health required." The pleading further set forth her assiduous care for him, the failure of both to make a will, her reliance upon his agreement to leave his property to her and the fact of his making the will giving but one-half to her, without her knowledge or consent, and prayed the "specific enforcement of said agreement in such terms of equity as may be effective to set over said estate to her."

After an extended trial the court made findings of fact covering all the material matters shown by the evidence, including the following:

"22. Prior to the marriage of plaintiff and Michael Breen, there was no written agreement of any kind entered into between them concerning their property rights.

"23. There is some evidence in this case to show that preceding the marriage of plaintiff to Michael Breen, that there were some oral negotiations between them respecting their property, but the testimony in relation thereto as to the exact nature of their agreement is unsatisfactory, uncertain and indefinite.

"24. There is no testimony in this case to support the allegation contained in the plaintiff's petition that it was a part of the oral negotiations of plaintiff and Michael Breen preceding their marriage, that in addition to marrying him she should 'care for him during the remainder of his life.'

"25. That neither plaintiff nor Michael Breen at any time subsequent to their marriage and preceding the death of said Michael Breen made a will, except the will in controversy, deed or conveyance of any kind whatsoever, of their respective properties one to the other.

"26. No antenuptial agreement of any kind was made by the plaintiff and Michael Breen, the terms of which have been performed either wholly or in part by the plaintiff, except the agreement to marry."

The conclusion of law was in favor of the defendants.

It is insisted that by the very fact and act of marriage the plaintiff contracted to care for her husband during his natural life, and hence a separate agreement to that effect was not essential. Plainly the pleader did not rely upon the mere promise to marry, but upon the additional promise to care for the husband during the remainder of his life, and so alleged and also set forth special reasons why such burden would be more than ordinarily onerous to the plaintiff because of the health and condition of the husband.

We have carefully examined the entire record. There was testimony of conversations and statements before the marriage to the effect that she was to have his property if she outlived him and he was to have her's, save her patrimony, if he survived her; also statements after the marriage indicating an intention on his part that she should have his property at his death. But the trial court was unable to find testimony establishing the contract and consideration as alleged, and while we are urged to find independently in favor of the plaintiff, we discover no evidence sufficient to substantiate error in the findings of fact or conclusion of law complained of.

Whether or not marriage can ever constitute part performance of an oral antenuptial agreement so as to remove the operation of the statute of frauds, it could not be said to have had that effect in this case for the reason that the other principal element and consideration pleaded was not established by the proof.

This renders needless any consideration of other questions presented including those arising on the cross-appeal.

The judgment is affirmed.